**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| VROOM, INC., | § | Case No. 24-90571 (CML) |
| | § | |
| | § | |
| Debtor.[1] | § | |
| | § | |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
THE EMPLOYMENT AND RETENTION OF LATHAM & WATKINS LLP
AS SPECIAL CORPORATE COUNSEL EFFECTIVE AS OF THE PETITION DATE**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtor and debtor in possession (the "**Debtor**" and together with its non-Debtor affiliates, collectively, the "**Company**") requests entry of an order substantially in the form attached hereto (the "**Proposed Order**"), authorizing the Debtor to employ and retain Latham & Watkins LLP ("**L&W**") as special corporate counsel, effective as of November 13, 2024 (the "**Petition Date**"). In support of this application (the "**Application**"), the Debtor relies on and incorporates by reference (i) the declaration of David A. Hammerman, a partner of L&W, which is attached hereto as Exhibit A (the "**Hammerman Declaration**"), and (ii) the declaration of Thomas H. Shortt, the Chief Executive Officer of Vroom, Inc. ("**Vroom**"), which is attached

---

[1] The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number is, Vroom, Inc. (2566). The Debtor's address is 3600 West Sam Houston Pkwy S, Floor 4, Houston, Texas 77042.

hereto as <u>Exhibit B</u> (the "**Retention Declaration**").  In further support of this Application, the Debtor represents as follows:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the Southern District of Texas (this "**Court**") has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the Debtor consents to the entry of a final order or judgment by the Court in connection with this Application if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Bankruptcy Local Rules 2014-1 and 2016-1, and the Procedures for Complex Cases in the Southern District of Texas (the "**Complex Case Procedures**").

**BACKGROUND**

3.      On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and commenced this chapter 11 case (the "**Chapter 11 Case**").  The Debtor is operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or an examiner has been made in the Chapter 11 Case, and no official statutory committees have

2

been appointed or designated by the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**").

4.      Additional information regarding the Debtor's business, capital structure, and the events leading up to the Petition Date is set forth in the *Declaration of Thomas H. Shortt in Support of the Chapter 11 Petition and First Day Motions* [Docket No. 10] (the "**First Day Declaration**").[2]

## RELIEF REQUESTED

5.      The Debtor seeks entry of the Proposed Order, authorizing the employment and retention of L&W as special corporate counsel for the Debtor, effective as of the Petition Date, in accordance with the terms and conditions of that certain amended and restated engagement letter dated as of November 9, 2024 (the "**Engagement Letter**"), a copy of which is attached as Exhibit 1 to the Hammerman Declaration and incorporated herein by reference.

## L&W'S QUALIFICATIONS

6.      The Debtor seeks to retain L&W to provide the L&W Services (as defined below) due to the firm's reputation and expertise in handling complex corporate matters in the context of large chapter 11 cases.  Specifically, L&W's corporate practice has broad experience in a wide variety of matters, including capital markets, securities, and contractual matters, and the L&W team representing the Debtor includes several professionals who have extensive experience in addressing tax, employee-related, and benefit issues that emerge in the context of a restructuring.

7.      L&W and its partners have represented numerous debtors as special counsel pursuant to Section 327(e) of the Bankruptcy Code, including Mediamath Holdings, Inc., National Cinemedia, LLC, Purdue Pharma L.P., Exco Resources, Inc., and Refco Inc.

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

8.      Moreover, for approximately 5 years, L&W has represented the Debtor and certain of its non-Debtor affiliates with respect to a wide range of legal matters, including the Debtor's initial public offering and related corporate governance matters.  As a result, L&W possesses an in-depth knowledge of the Debtor's business affairs and capital structure.

9.      In light of the foregoing, L&W is well qualified to represent the Debtor as special corporate counsel pursuant to Section 327(e) of the Bankruptcy Code in connection with the L&W Services, and L&W's retention is in the best interests of the Debtor's estate, creditors, and other parties in interest.

## SERVICES TO BE PROVIDED

10.      The Debtor desires to employ L&W as special corporate counsel because of, among other reasons, the nature of the legal services that will be required in connection with the Chapter 11 Case.  To engage alternative corporate counsel at this stage of the Debtor's case would be tremendously disruptive and could derail the possibility of the Debtor's emergence on the accelerated timeline necessary for a successful reorganization.

### Background and Engagement History

11.      In August 2019, the Company retained L&W to represent it in connection with a variety of matters, including certain corporate, banking, transactional, tax, benefits, and employee-related matters, and the Debtor's initial public offering.  In early 2021, the Company expanded the scope of L&W's engagement to represent the Company in connection with federal securities class actions that were eventually consolidated into a single matter captioned *In re: Vroom, Inc. Securities Litigation.*, No. 21-cv-02477-PGG (S.D.N.Y.) (the "**Securities Class Action**"), and in connection with any and all related matters, including certain shareholder derivative suits.[3]  The

---

[3]    The related matters include *Rainey v. Hennessy, et al.*, No. 1:21-cv-06933 (S.D.N.Y.), *Salli v. Hennessy, et al.*, No. 1:21-cv-09237 (S.D.N.Y.), *McDonough v. Hennessy, et al.*, No. 1:21-cv-00752  (S.D.N.Y.), *Yunayev v.*

Securities Class Action names the Debtor and certain of the Debtor's individual directors and officers as defendants (together the "**Vroom Individual Defendants**").

**Scope of Current Engagement**

12.     Prior to the commencement of the Chapter 11 Case, on November 9, 2024, the Debtor and L&W executed the updated Engagement Letter outlining the scope of the work that L&W would be performing for the Debtor during the Chapter 11 Case, which includes solely corporate, finance, public company reporting, governance, tax, benefits, employee-related and securities matters (collectively, the "**L&W Services**").

13.     For the avoidance of doubt, L&W is not currently performing any work for the Company in the Lawsuits where L&W represents the Vroom Individual Defendants.

14.     L&W will not serve as the Debtor's general or special counsel on matters not set forth in this Application and the Engagement Letter during the pendency of the Chapter 11 Case and will not advise the Debtor with respect to its duties under the Bankruptcy Code.  As noted below, L&W will coordinate with the Debtor's other professionals to avoid duplication of services.

15.     As discussed above, L&W has extensive experience representing clients in connection with finance, public company reporting, governance, tax, benefits, employee-related and securities matters, and since August 2019, L&W has gained extensive institutional knowledge regarding the Debtor and the L&W Services.  L&W's continued representation of the Debtor in these matters is necessary to ensure that these complex issues with which L&W has significant experience continue to be handled in an efficient manner aimed at maximizing value for the estate.

16.     Subject to the approval of this Application, L&W has informed the Debtor that it is willing to serve as the Debtor's corporate counsel and to perform the L&W Services.

---

*Hennessy, et al.*, No. 1:22-cv-00852 (S.D.N.Y.), and *Godlu v. Hennessy, et al.*, No. 1:22-cv-00569 (D. Del.) (the "**Derivative Actions**" and together with the Securities Class Action, the "**Lawsuits**").

## NO DUPLICATION OF SERVICES

17.     The Debtor intends that the L&W Services will complement, and not duplicate, the services being rendered by any other professional retained in this Chapter 11 Case. L&W understands that the Debtor has retained and may retain additional professionals during the term of its engagement and agrees to work cooperatively with such professionals, including Porter Hedges LLP, as the Debtor's proposed bankruptcy counsel under Section 327(a) of the Bankruptcy Code, to avoid any duplication of services.

## PROFESSIONAL COMPENSATION

18.     L&W operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.  L&W's hourly rates are designed to compensate L&W fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.

19.     L&W's current hourly rates are set forth in the Hammerman Declaration, along with the names and rates of the attorneys with primary responsibility for providing services to the Debtor.  Hourly rates vary with the experience and seniority of the individuals assigned and are subject to periodic adjustments to reflect economic and other conditions.[4]  Except as may otherwise be set forth in the Hammerman Declaration, L&W did not agree to any variations from, or alternatives to, its standard or customary billing arrangements for this engagement, and none of

---

[4]     L&W increases the hourly billing rate of attorneys and paraprofessionals in the form of (a) step increases historically awarded in the ordinary course of business on the basis of advancing seniority and promotion and (b) periodic increases within each attorney's and paraprofessional's current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the U.S. Trustee Guidelines (as defined below)).  As set forth in the Order, L&W will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and will file any such notice with the Court.

the professionals included in this engagement will vary his or her rate based on the geographic location of the Chapter 11 Case.

20.     Other than the periodic adjustments described above and as set forth in the Hammerman Declaration, L&W's hourly rates and the financial terms of the engagement proposed herein are consistent with the rates and terms of L&W's prepetition engagement. As described in the Retention Declaration, the Debtor has reviewed and approved L&W's standard rate structure and determined that it is appropriate and comparable to (a) the rates that L&W charges for non-bankruptcy representations or (b) the rates of other comparably skilled professionals.

21.     Consistent with the Engagement Letter and L&W's policy with respect to its other clients, L&W will continue to charge the Debtor for all services provided and charges and disbursements incurred in the rendition of services. It is L&W's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also L&W's policy to charge its clients only the amount actually incurred by L&W in connection with such items.

22.     During the Chapter 11 Case, L&W will apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in the Chapter 11 Case in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders entered in the Chapter 11 Case governing professional compensation and reimbursement for services rendered and charges and disbursements incurred. Such applications will constitute a request for interim payment against L&W's reasonable fees and expenses to be determined at the conclusion of the Chapter 11 Case.

**COMPENSATION RECEIVED BY L&W FROM THE DEBTOR**

23.     As of the Petition Date, the Debtor did not owe L&W any amounts for legal services rendered before the Petition Date, and L&W is not a creditor of the Debtor.

24.     As set forth in the Hammerman Declaration, during the 90-day period prior to the Petition Date, L&W received payments and advances in the aggregate amount of $2,880,032.59 for services to be performed and expenses incurred, and to be performed and incurred in advance of the Petition Date.  All payments were in the form of fee advances and payments on invoices (together the "**Fee Advances**").  After application of Fee Advances paid by the Debtor to L&W prior to the Petition Date, L&W currently has $171,389.21 remaining on its retainer as of the Petition Date.

25.     L&W requests that the Fee Advances be treated as an evergreen retainer and be held by L&W as security throughout the Chapter 11 Case until L&W's fees and expenses are awarded and payable to L&W on a final basis.  The Debtor submits that an evergreen retainer is appropriate for several reasons.  First, these types of retainer agreements reflect normal business terms in the marketplace.  Second, both L&W and the Debtor are sophisticated business entities that have negotiated the retainer at arm's length.  Third, the retention of L&W is in the best interests of the Debtor's estates, as the applicable retention agreement and retainer allow the Debtor to maintain their prepetition relationship established with L&W.

**BASIS FOR RELIEF**

26.     The Debtor seeks retention and employment of L&W as its special corporate counsel pursuant to Section 327(e) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ, for a specified special purpose, other than to represent the [debtor in possession] in conducting the case, an attorney that has represented the debtor, if in the best interest of the

> estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate *with respect to the matter on which such attorney is to be employed*.

11 U.S.C. § 327(e) (emphasis added).

27.     For all the reasons stated above and in the Hammerman Declaration and the Retention Declaration, the retention and employment of L&W as special corporate counsel is necessary and in the best interest of the Debtor, its estate, and its creditors.  Furthermore, to the best of the Debtor's knowledge, information, and belief, L&W has represented that it neither holds nor represents any interest that is materially adverse to the Debtor or its estate in connection with any of the L&W Services.

28.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

29.     As disclosed in the Hammerman Declaration, L&W has in the past represented, and currently represents, certain parties in interest in the Chapter 11 Case.  Except as set forth in the Hammerman Declaration, all such representations are or were in connection with matters wholly unrelated to the Debtor and the Chapter 11 Case. Pursuant to Section 327(e) of the Bankruptcy Code, L&W does not hold or represent an interest adverse from the Debtor or its estate with respect to the L&W Services.

30.     The Debtor understands that L&W will continue to conduct periodic conflicts analyses to determine whether any conflicts or other disqualifying circumstances exist or arise.  If

any relevant facts or relationships are discovered, L&W will promptly file a supplemental declaration as required by Bankruptcy Rule 2014(a).

31.     Accordingly, retention of L&W meets the requirements set forth in section 327(e) of the Bankruptcy Code.

## <u>NOTICE</u>

32.     Notice of this Application will be given to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the indenture trustee and counsel for the indenture trustee for the Unsecured Notes; (d) counsel for the Consenting Noteholders; (e) the Consenting Equity Interest Holders; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for states in which the Debtor conducts business; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtor believes that no other or further notice is required or needed under the circumstances.  A copy of the Application is available on the Debtors' case website at https://www.veritaglobal.net/vrm/.


*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested in the Application and such other and further relief as may be just and proper.

Dated: December 3, 2024
Houston, Texas

/s/ Thomas H. Shortt
Name:  Thomas H. Shortt
Title:  Chief Executive Officer, Vroom, Inc.

**<u>CERTIFICATE OF SERVICE</u>**

      I certify that on December 3, 2024, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.


                       */s/ John F. Higgins*
                       John F. Higgins