## Exhibit A

**Hammerman Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| VROOM, INC., | § | Case No. 24-90571 (CML) |
|  | § |  |
|  | § |  |
| Debtor.[1] | § |  |
|  | § |  |

**DECLARATION OF DAVID A. HAMMERMAN AND
<u>DISCLOSURE STATEMENT OF LATHAM & WATKINS LLP</u>**

I, David A. Hammerman, declare as follows:

1.      I am a partner in the law firm of Latham & Watkins LLP ("**<u>L&W</u>**"), an international law firm with offices across the United States, Europe, and Asia. I am admitted in, practicing in, and a member in good standing of the bars of the State of New York and the Southern District of Texas, and there are no disciplinary proceedings pending against me.  I am over the age of eighteen, am authorized to submit this Declaration, and am competent to testify on the matters contained herein.

2.      I submit this Declaration to provide disclosure in connection with the Debtor's *Application for Entry of an Order Authorizing the Employment and Retention of Latham & Watkins LLP as Special Corporate Counsel Effective as of the Petition Date* (the "**<u>Application</u>**"),[2] by which the above-captioned debtor and debtor-in-possession (the "**<u>Debtor</u>**") seeks authority to employ and retain L&W as special corporate counsel effective as of the Petition Date.

---

[1]    The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number is, Vroom, Inc. (2566).  The Debtor's address is 3600 West Sam Houston Pkwy S, Floor 4, Houston, Texas 77042.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

3.     Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by other L&W professionals or paraprofessionals, or learned from my review of relevant documents. To the extent any information disclosed herein requires amendment or modification as additional information becomes available to L&W, a supplemental declaration will be submitted to this Court reflecting such amended or modified information.

**L&W'S QUALIFICATIONS**

4.     The Debtor seeks to retain L&W to provide the L&W Services (as defined below) due to the firm's reputation and expertise in handling complex corporate matters in the context of large chapter 11 cases. Specifically, L&W's corporate practice has broad experience in a wide variety of matters, including capital markets, securities, and contractual matters, and the L&W team representing the Debtor includes several professionals who have extensive experience in addressing tax, employee-related, and benefit issues that emerge in the context of a restructuring.

5.     L&W and its partners have represented numerous debtors as special counsel pursuant to Section 327(e) of the Bankruptcy Code, including Mediamath Holdings, Inc., National Cinemedia, LLC, Purdue Pharma L.P., Exco Resources, Inc., and Refco Inc.

Moreover, for approximately 5 years, L&W has represented the Debtor and certain of its non-Debtor affiliates with respect to a wide range of legal matters, including the Debtor's initial public offering and related corporate governance matters. As a result, L&W possesses an in-depth knowledge of the Debtor's business affairs and capital structure.

6.     In light of the foregoing, L&W is well qualified to represent the Debtor as special corporate counsel pursuant to Section 327(e) of the Bankruptcy Code in connection with the L&W

2

Services, and L&W's retention is in the best interests of the Debtor's estate, creditors, and other parties in interest.

## SERVICES TO BE PROVIDED

7.     The Debtor desires to employ L&W as special corporate counsel because of, among other reasons, the nature of the legal services that will be required in connection with the Chapter 11 Case.  To engage alternative corporate counsel at this stage of the Debtor's case would be tremendously disruptive and could derail the possibility of the Debtor's emergence on the accelerated timeline necessary for a successful reorganization.

### Background and Engagement History

8.     In August 2019, the Company retained L&W to represent it in connection with a variety of matters, including certain corporate, banking, transactional, tax, benefits, and employee-related matters, and the Debtor's initial public offering.  In early 2021, the Company expanded the scope of L&W's engagement to represent the Company in connection with federal securities class actions that were eventually consolidated into a single matter captioned *In re: Vroom, Inc. Securities Litigation*., No. 21-cv-02477-PGG (S.D.N.Y.) (the "**Securities Class Action**"), and in connection with any and all related matters, including certain shareholder derivative suits.[3]  The Securities Class Action names the Debtor and certain of the Debtor's individual directors and officers as defendants (together the "**Vroom Individual Defendants**").

### Scope of Current Engagement

---

[3]   The related matters include *Rainey v. Hennessy, et al*., No. 1:21-cv-06933 (S.D.N.Y.), S*alli v. Hennessy, et al.*, No. 1:21-cv-09237 (S.D.N.Y.), *McDonough v. Hennessy, et al*., No. 1:21-cv-00752  (S.D.N.Y.), *Yunayev v. Hennessy, et al.*, No. 1:22-cv-00852 (S.D.N.Y.), and *Godlu v. Hennessy, et al.*, No. 1:22-cv-00569 (D. Del.) (the "**Derivative Actions**" and together with the Securities Class Action, the "**Lawsuits**").

9.      Prior to the commencement of the Chapter 11 Case, on November 9, 2024, the Debtor and L&W executed the updated Engagement Letter outlining the scope of the work that L&W would be performing for the Debtor during the Chapter 11 Case, which includes solely corporate, finance, public company reporting, governance, tax, benefits, employee-related and securities matters (collectively, the "**L&W Services**").

10.      For the avoidance of doubt, L&W is not currently performing any work for the Company in the Lawsuits where L&W represents the Vroom Individual Defendants.

11.      L&W will not serve as the Debtor's general or special counsel on matters not set forth in this Application and the Engagement Letter during the pendency of the Chapter 11 Case and will not advise the Debtor with respect to its duties under the Bankruptcy Code.  As noted below, L&W will coordinate with the Debtor's other professionals to avoid duplication of services.

12.      As discussed above, L&W has extensive experience representing clients in connection with finance, public company reporting, governance, tax, benefits, employee-related and securities matters, and since August 2019, L&W has gained extensive institutional knowledge regarding the Debtor and the L&W Services.  L&W's continued representation of the Debtor in these matters is necessary to ensure that these complex issues with which L&W has significant experience continue to be handled in an efficient manner aimed at maximizing value for the estate.

13.      Subject to the approval of this Application, L&W has informed the Debtor that it is willing to serve as the Debtor's corporate counsel and to perform the L&W Services.

## NO DUPLICATION OF SERVICES

14.      L&W understands that the Debtor has retained and may retain additional professionals during the term of its engagement and agrees to work cooperatively with such

4

professionals, including Porter Hedges LLP, as the Debtor's proposed bankruptcy counsel under Section 327(a) of the Bankruptcy Code, to avoid any duplication of services.

## **PROFESSIONAL COMPENSATION**

15.     L&W intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Case in compliance with Sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any procedures and orders of the Court.

16.     L&W operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.  L&W's current hourly rates for matters related to the Chapter 11 Case range as follows:

| Billing Category | Range |
|---|---|
| Partners | $1,675- $2,745 |
| Counsel | $1,595 to $2,125 |
| Associates | $905 to $1,755 |
| Professional Staff | $275 to $1,170 |
| Paralegals | $345 to $835 |

17.     L&W's hourly rates are designed to compensate L&W fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned and are subject to periodic adjustments to reflect economic and other conditions (which adjustments will be reflected in the first L&W fee application following such adjustments).  As part of this engagement, L&W has agreed to charge a flat fee of $250,000 for public reporting under the Securities Exchange Act of 1934 for the period from January 1, 2024 through December 31, 2024. This flat fee shall apply only to ordinary course public reporting and shall not apply to public company reporting that is non-ordinary course and/or

related to transactional work.  In addition, L&W has agreed to a 15% discount on standard hourly rates on any non-transactional legal work.

18.     Consistent with the Engagement Letter and L&W's policy with respect to its other clients, L&W will continue to charge the Debtor for all services provided and for other charges and disbursements incurred in the rendition of services.  It is L&W's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also L&W's policy to charge its clients only the amount actually incurred by L&W in connection with such items.  These charges and disbursements include (without limitation) costs for photocopying, electronic data management services, including scanning and document imaging, travel, travel-related expenses, business meals, computerized research, messengers, couriers, postage, witness fees, and other fees related to trials and hearings.  L&W professionals also may charge their overtime meals and overtime transportation to the Debtor consistent with prepetition practices, and L&W will continue to charge for overtime secretarial charges that arise out of business necessity.

19.     No promises have been received by L&W, or any partner, counsel, or associate thereof, as to payment or compensation in connection with the Chapter 11 Case other than in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.  Except for sharing arrangements among L&W, its affiliated law practice entities, and their respective members, in accordance with Sections 329 and 504 of the Bankruptcy Code and Bankruptcy Rule 2016(b), L&W has not entered into any agreements, express or implied, with any other party in interest, including the Debtor, any creditor, or any attorney for such party in interest in the Chapter 11 Case for (a) the purpose of sharing or fixing fees or other compensation

to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) payment of such compensation from the assets of the estate in excess of the compensation allowed by this Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) payment of compensation in connection with the Chapter 11 Case other than in accordance with the applicable provisions of the Bankruptcy Code.

## U.S. TRUSTEE GUIDELINES

20.     L&W will make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines, both in connection with this Application and with any fee applications filed by L&W in the Chapter 11 Case.

21.     The following is provided in response to the request for additional information set forth in Paragraph D.1 of the *Appendix B - Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013* issued by the Executive Office of the United States Trustee (the "**U.S. Trustee Guidelines**"):

  a.     **Question**: Did L&W agree to any variations from, or alternatives to, L&W's standard billing arrangements for this engagement?

  **Answer**: Yes.  As described above, L&W has agreed to a flat fee of $250,000 for public reporting under the Securities Exchange Act of 1934 for the period from January 1, 2024 through December 31, 2024 (subject to the limitations described above) and a 15% discount on standard hourly rates on any non-transactional legal work.  The hourly rate structure of L&W professionals provided by L&W is appropriate and comparable to (a) the hourly rates of L&W professionals that L&W charges for non-bankruptcy representations and (b) the hourly rates of other comparably skilled professionals.

  b.     **Question**: Do any of the L&W professionals in this engagement vary their rate based on the geographic location of the Debtor's chapter 11 case?

Answer: No.

c.   **Question**: If L&W has represented the Debtor in the 12 months prepetition, disclose L&W's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If L&W's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Answer**: L&W's current hourly rates for services rendered on behalf of the Debtor are set forth above. These rates have been used since January 1 of this year. During the prior calendar year, L&W used the following rates for services rendered on behalf of the Debtor: $1,360 to $2,230 for partners; $1,300 to $1,690 for counsel; $705 to $1,400 for associates; and $300 to $600 for paralegals. All material financial terms have remained unchanged since the prepetition period, except for a postpetition 50% discount for non-working travel time.

d.   **Question**: Has the Debtor approved L&W's budget and staffing plan and, if so, for what budget period?

**Answer**: Not applicable. L&W did not prepare a budget.

## COMPENSATION RECEIVED BY L&W FROM THE DEBTOR

22.    As of the Petition Date, the Debtor did not owe L&W any amounts for legal services rendered before the Petition Date, and L&W is not a creditor of the Debtor.

23.    As set forth in the Application, during the 90-day period prior to the Petition Date, L&W received payments and advances in the aggregate amount of $2,880,032.59 for services to be performed and expenses incurred, and to be performed and incurred in advance of the Petition Date. All payments were in the form of fee advances and payments on invoices (together the "**Fee Advances**"). After application of Fee Advances paid by the Debtor to L&W prior to the Petition Date, L&W currently has $171,389.21 remaining on its retainer as of the Petition Date.

24.    L&W requests that the Fee Advances be treated as an evergreen retainer and be held by L&W as security throughout the Chapter 11 Cases until L&W's fees and expenses are awarded and payable to L&W on a final basis.

8

## **L&W'S CONNECTIONS TO PARTIES IN INTEREST**

25.     In preparing this Declaration, I used a set of procedures developed by L&W to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules regarding the retention of professionals by a debtor under the Bankruptcy Code (the "**Firm Disclosure Procedures**").   Pursuant to the Firm Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this Declaration and to ascertain L&W's connection to such parties:

      a.    The following comprehensive list (the "**Retention Checklist**") of the types of entities that may have contacts with the Debtor was developed through discussions with the L&W attorneys who have provided services to the Debtor and in consultation with the advisors to and senior management of the Debtor:

          (i)      Debtor and Non-Debtor Affiliates
          (ii)     Debtor's Previous Names (including DBA and Trade Names)
          (iii)    Debtor's Restructuring Professionals
          (iv)    Restructuring Professionals for Noteholders
          (v)      Ordinary Course Professionals
          (vi)    Current and Former Directors and Officers
          (vii)   Significant Noteholders and Indenture Trustees
          (viii)  Parties to Pending Litigation
          (ix)    Debtor's Bank Account and Cash Management Institutions
          (x)      Known Holders of 5% or More of Outstanding Common Equity Securities of Vroom, Inc. Surety Bonds
          (xi)    Landlords
          (xii)   Taxing and Governmental Authorities
          (xiii)  Insurance Providers
          (xiv)  Material Contract Counterparties
          (xv)   Top 20 Unsecured Creditors (Excluding Creditors Appearing in Other Categories of this List)
          (xvi)  Utility Providers
          (xvii) U.S. Bankruptcy Judges for the Southern District of Texas (and Key Staff Members)
          (xviii) United States Trustee for the Southern District of Texas (and Key Staff Members)
          (xix)  Significant Competitors

      b.    The Debtor's advisors then compiled a list of the names of entities that may be parties in interest in the Chapter 11 Case (the "**Potential Parties in**

**Interest**"), as set forth on <u>Appendix 1</u> hereto. The information listed on <u>Appendix 1</u> may have changed without my knowledge and may change during the pendency of the Chapter 11 Case. L&W will update this Declaration, as described below, when L&W becomes aware of new material information.

c.   L&W maintains a master client database as part of its conflict clearance and billing records. The master client database includes the names of the entities for which any attorney time charges have been billed since the database was first created (the "**Client Database**"). The Client Database includes the names of all current and former Clients, the names of the parties who are or were related or adverse to such current and former Clients, and the names of the L&W personnel who are or were responsible for current or former matters for such clients. L&W policy is that no new matter may be accepted or opened within L&W without completing and submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties, and, in some cases, parties related to the client or to an adverse party. Accordingly, the database is updated for every new matter undertaken by L&W. The accuracy of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

d.   L&W compared the names of each of the Potential Parties in Interest to client matters in the Client Database for which professional time was recorded during the three years prior to the Petition Date and compiled a list of any matches generated by the comparison (the "**Client Match List**"). The Client Match List is set forth on <u>Appendix 2</u> hereto.[4]

e.   Using information in the Client Database concerning entities on the Client Match List and making general and, if applicable, specific inquiries of L&W personnel, L&W verified that it does not represent and has not represented any entity on the Client Match List in connection with the Debtor or the Chapter 11 Case, except as otherwise disclosed in this Declaration.

f.   In addition, a general inquiry was sent by email to all L&W attorneys to determine whether any such individuals or any members of their households (i) own or owned any debt or equity securities of the Debtor; (ii) hold or held any claim against or interest adverse to the Debtor; (iii) represent or represented a client in a matter adverse to the Debtor; (iv) are or were officers, directors, or employees of the Debtor; (v) are related to or have any

---

[4]   As referenced in <u>Appendix 2</u>, the term "**Current Client**" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years and L&W has at least one open matter. The term "**Former Client**" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years but all matters for such client have since been closed. L&W does not disclose connections if time was recorded more than three years before the Petition Date.

connections to Bankruptcy Judges in the Southern District of Texas; or (vi) are related to or have any connections to anyone working in the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**").

26. Of the entities listed on <u>Appendix 2</u>, only one represented more than 1% of L&W's total client billings for the twelve-month period ending October 31, 2024 (on a consolidated basis):[5] JP Morgan Chase Bank.[6] None of the entities listed on <u>Appendix 2</u> represented more than 2% of L&W's total client billings for such twelve-month period.

27. L&W will periodically review its files during the pendency of the Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any relevant facts or relationships are discovered or arise, L&W will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by Bankruptcy Rule 2014(a). In that regard, L&W intends to disclose clients in the capacity that they first appear in a conflicts search. For example, if a client has already been disclosed in this Declaration in one capacity (*e.g.*, a bank), and the client appears in a subsequent conflicts search in a different capacity (*e.g.*, a vendor), then L&W does not intend to disclose the same client again in supplemental declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

28. Except as set forth herein, and based upon the information available to me, neither I, nor L&W, nor any partner or associate thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtor or its estate with respect to the L&W Services. Based on the foregoing and to the best of my knowledge, I believe that L&W has no connection to the

---

[5]   According to L&W's records as of November 18, 2024.

[6]   L&W will provide the exact percentage of total client billings that these entities represent to the U.S. Trustee on a confidential basis upon request.

Debtor, its creditors, or its related parties except as may be disclosed in this Declaration (as supplemented from time-to-time). The proposed engagement of L&W is not prohibited by or improper under Bankruptcy Rule 5002(a).

## SPECIFIC DISCLOSURES

29.     As specifically set forth below and in Appendix 2, L&W represents or has represented certain of the Debtor's creditors, equity security holders, professionals, or other Potential Parties in Interest, including the current and former directors and officers, in matters unrelated to the Debtor and the Chapter 11 Case. To the best of my knowledge, none of the representations or relationships described herein is adverse to the interests of the Debtor or its estates with respect to the L&W Services. L&W's retention under Section 327(e) of the Bankruptcy Code is therefore proper.

### Relationship with Non-Debtor Affiliates

30.     L&W currently represents or previously represented certain non-debtor affiliates of the Debtor, including United Auto Credit Corporation, Vast.com, Inc., Vroom Automotive, LLC, and CarStory, LLC (the "**Non-Debtor Affiliates**") in certain corporate, benefits, and tax related matters unrelated to the Chapter 11 Case.

31.     To the best of my knowledge, after due inquiry, L&W's representation of the Vroom Individual Defendants is not adverse to the Debtor or the Debtor's estate with respect to the L&W Services. L&W's retention under Section 327(e) of the Bankruptcy Code is therefore proper.

### Connections to Officers and Directors

32.     L&W currently represents or formerly represented certain affiliates, subsidiaries, and/or entities associated with the Debtor's current and recent former officers and directors.

Specifically, L&W represents the Company and Vroom Individual Defendants in connection with the Lawsuits.  As discussed above, the Securities Class Action names the Debtor and certain of the Debtor's current and former individual directors and officers as defendants.  To the best of my knowledge, after due inquiry, L&W does not currently represent any of the Debtor's current and/or former individual directors and officers in any other capacity other than described herein.

33.     Prior to the commencement of the Chapter 11 Case, the Debtor and L&W executed the separate Engagement Letter regarding the scope of the work that L&W would be performing for the Debtor to include certain corporate, finance, public company reporting, governance, tax, benefits, employee-related and securities matters.

34.     To the best of my knowledge, after due inquiry, L&W's representation of the Vroom Individual Defendants is not adverse to the Debtor or the Debtor's estate with respect to the L&W Services.  L&W's retention under Section 327(e) of the Bankruptcy Code is therefore proper, notwithstanding L&W's prior representation of the Vroom Individual Defendants in the foregoing matters.

### Relationships with Significant Lenders

35.     L&W currently represents or formerly represented certain of the Debtor's significant secured or unsecured lenders and/or certain of their affiliates.  Specifically, L&W currently represents or in the past has represented Blackrock, Inc, Blackwell Partners LLC - Series A, EMG Holdings LP, Equitable Investment Management Group LLC, Mudrick Capital Management L.P., The Bank of America Corporation, U.S. Bank National Association, Sona Asset Management State Street Corporation and/or certain of their affiliates (collectively, the "**Lenders**") in a number of different matters unrelated to the Debtor and the Chapter 11 Case.  The Lenders comprise one or more of the following: (a) a prepetition lender to the Debtor; (b) an entity

with whom the Debtor has a banking relationship; or (c) an agent under the Debtor's prepetition Unsecured Notes Indenture.  L&W has not represented and will not represent the Lenders in connection with any matter in the Chapter 11 Case.

36.     I do not believe that L&W's past or current representation of the Lenders in matters unrelated to the Debtor or the Chapter 11 Case is adverse to the Debtor or its estate with respect to the L&W Services.

**Relationships with Significant Prepetition Equity Holders**

37.     L&W currently represents or formerly represented certain of the Debtor's significant prepetition equity holders and/or certain of their affiliates.  Specifically, L&W currently represents, or in the past has represented L Catterton Management Limited and/or certain of their affiliates in certain transactional matters unrelated to the to the L&W Services.  In addition, L&W currently represents or formerly represented Robert Mylod, Jr. (together with L Catterton Management Limited, the "**Equity Holders**") solely in the Lawsuits described above, and in no other capacity.

38.     I do not believe that L&W's past or current representation of the Equity Holders in the foregoing matters is adverse to the Debtor or its estate with respect to the L&W Services.  In the event that the Debtor and any of the Equity Holders become directly adverse to one another in an adversary proceeding in the Chapter 11 Case, the Debtor will employ conflicts counsel to handle the matter as necessary.

**L&W Attorney Connections with the Office of the**
**United States Trustee for Region 7 and Judges for the United States**
**Bankruptcy Court for the Southern District of Texas (and Key Staff Members)**

39.     Certain L&W attorneys and/or personnel (or members of their immediate families):  (a) previously worked at other law firms or in government services, (b) have

14

participated and may participate in legal activities; (c) had and have affiliations through law school, conference, bar, employment, or other organizations; and/or (d) may have social interactions or friendships involving (i) Judges and/or key staff members of the United States Bankruptcy Court for the Southern District of Texas or (ii) attorneys or key staff members of the Office of the United States Trustee for the Southern District of Texas.  I do not believe that the foregoing is adverse to the Debtor or its estate with respect to the L&W Services.

## Other Connections to Potential Parties in Interest

40.     L&W previously represented Craigslist, Inc. in certain transactional matters unrelated to the L&W Services.  L&W's representation in these matters was wholly unrelated to the L&W Services and Chapter 11 Case and concluded in 2021.

41.     Certain insurance companies pay the legal bills of L&W clients.  Some of these insurance companies may be involved in the Chapter 11 Case.  None of these insurance companies, however, is an L&W client as a result of the fact that it pays legal fees on behalf of a client of L&W.

42.     Certain of the parties in interest in the Chapter 11 Case may be, or previously may have been, members of ad hoc or official creditors' committees represented by L&W in matters unrelated to the Chapter 11 Case.  In such instances, L&W represented only the committee or group, and did not represent the creditors in their individual capacities, and no attorney client relationship exists or existed between L&W and such parties in interest unless specifically noted. L&W does not and will not represent any of these parties in connection with the Chapter 11 Case.

43.     L&W may have represented, and may currently represent, entities that hold or may in the future hold certain of the Debtor's debt in beneficial accounts on behalf of unidentified parties.  Because distressed debt is actively traded in commercial markets, L&W may be unaware

of the actual holder of such debt at any given moment.  L&W also represents numerous entities in unrelated matters that may buy and/or sell distressed debt, claims, or equity interests of chapter 11 debtors.  Moreover, from time to time, L&W is engaged by various entities that buy and/or sell distressed debt to analyze the capital structure of a distressed company based on a review of publicly available information.  L&W does not undertake such reviews after it has been engaged to represent any such company, including the Debtor, and does not view any public debt review as an adverse representation to the Debtor.  Similarly, as a large, international firm, L&W may represent creditors and/or investors of or parties interested in investing in one or more parties in interest in these cases.  L&W does not believe these relationships represent interests adverse to the estate with respect to the L&W Services.

### Relationships with Other Professionals

44.    From time to time, L&W has referred work to other professionals to be retained in the Chapter 11 Case, and certain such professionals have referred work to L&W.  Also, as part of its practice, L&W appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of whom now or may in the future represent claimants and other parties in interest in these cases.  L&W has not represented, and will not represent, any such parties in relation to the Debtor or its Chapter 11 Case.  L&W does not have any relationship with any such attorneys, accountants, financial consultants, or investment bankers that would be adverse to the Debtor or its estates with respect to the L&W Services.

### L&W Attorney Investments

45.    From time to time, L&W partners, counsel, associates, and employees, or members of the households of the foregoing, personally invest in mutual funds, exchange-traded funds,

retirement funds, private equity funds, venture capital funds, hedge funds, fund of funds, and other types of investment funds (the "**Investment Funds**"), through which such individuals indirectly acquire an interest in debt or equity securities of many companies, one of which may be one of the Debtor, its creditors, or other parties in interest in the Chapter 11 Cases often without L&W's knowledge. Each such person generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. The Investment Funds are generally operated as a blind pool, meaning that when such persons make an investment in an Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell and have no control over such purchases or sales.

46.     From time to time one or more L&W partners voluntarily choose to form an entity (a "**Passive-Intermediary Entity**") to invest in one or more Investment Funds or, in certain instances, directly in private companies. Such Passive-Intermediary Entity is comprised only of persons who were L&W partners or retired partners at the time of the Passive-Intermediary Entity's formation (although some may later become former L&W partners), and participation in such a Passive-Intermediary Entity is wholly voluntary and only a portion of L&W's partners choose to participate. L&W itself does not invest in the Passive-Intermediary Entity. The Passive-Intermediary Entity generally owns substantially less than one percent of any underlying Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund in which a Passive-Intermediary Entity invests is operated as a blind pool, so that the Passive-Intermediary Entity does not know what securities the blind pool Investment Funds will purchase or sell, and has no control over such purchases or sales. The Passive-Intermediary

Entities commonly receive periodic statements and communications from the underlying Investment Funds. The L&W partners participating in the Passive Intermediary may or may not know the identity of the Investment Fund's underlying investments or the identity of the securities purchased, sold, or held by the Investment Fund.

47.    Certain of the Passive-Intermediary Entities may make a direct investment into a private company. In addition, as discussed above, the Firm Disclosure Procedures involve sending a general inquiry to all L&W attorneys to determine whether any such individuals or any members of their households own or owned any debt or equity securities of the Debtor or hold or held any claim against or interest adverse to the Debtor, among other things. Thus far, no response to this general inquiry has disclosed the ownership of any debt or equity securities of the Debtor or the holding of any claim against or interest adverse to the Debtor.

48.    From time to time, L&W partners, counsel, associates, and employees personally directly acquire a debt or equity security of a company, which may be (or become) the Debtor, its creditors, or other parties in interest in the Chapter 11 Case. L&W has a long-standing policy prohibiting attorneys and employees from using material non-public information that may come to their attention in the course of their work, so that all L&W attorneys and employees are barred from trading in securities with respect to which they possess material non-public information.

## OTHER INVESTIGATION AND DISCLOSURE MATTERS

49.    L&W's investigation and research of the Potential Parties in Interest has thus far failed to eliminate the possibility that Potential Parties in Interest other than those listed on Appendix 2 hereto may be current or Former Clients of L&W because: (a) the names of the Potential Parties in Interest are similar to, but not identical to, current or former L&W clients; or (b) the names of the Potential Parties in Interest are common names that appeared on our conflict

18

search results, but do not appear to be the same individuals or entities that are parties in interest herein.

50.     Although L&W has undertaken, and continues to undertake, extensive efforts to identify connections with the Debtor and other Potential Parties in Interest, it is possible that connections with some Potential Parties in Interest have not yet been identified.  Should L&W, through its continuing efforts, learn of any new connections of the nature discussed herein, L&W will so advise the Court in a timely manner as soon as reasonably practicable.

51.     L&W will not, while employed by the Debtor, represent an interest adverse to the Debtor or its estate with respect to the L&W Services.

52.     Insofar as I have been able to ascertain, I know of no conflict of interest that would preclude L&W's representation of the Debtor in the Chapter 11 Case.

53.     The foregoing constitutes the statement of L&W pursuant to Sections 327(e), 329, and 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b).

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 3, 2024       By: */s/ David A. Hammerman*
New York, New York             Name: David A. Hammerman
                           Title: Partner at Latham & Watkins LLP

## **Exhibit 1**

**Engagement Letter**

# LATHAM&WATKINS LLP

1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

November 9, 2024

Vroom, Inc.
1375 Broadway, 11th Floor
New York, NY 10018
Attn:  Anna-Lisa Corrales, Chief Legal Officer

Re:  Second Amended and Restated Engagement Letter

Dear Ms. Corrales:

We are pleased to continue to have Vroom, Inc. ("Vroom") as a client of Latham & Watkins LLP ("Latham").  Reference is made to that certain Engagement Letter, dated August 1, 2019, by and between Vroom and Latham (as amended, modified, or supplemented, the "Original Engagement Letter") and that certain Amended and Restated Engagement Letter, dated October 29, 2024, by and between Vroom and Latham (as amended, modified, or supplemented, the "Amended and Restated Engagement Letter" and together with the Original Engagement Letter, the "Prior Engagement Letters").  This letter amends and restates the Prior Engagement Letters and, as of the date hereof, supersedes the Prior Engagement Letters in their entirety and all other engagement letters by and between Vroom and Latham to the extent they are inconsistent with this Amended and Restated Engagement Letter.

## I.   **LEGAL SERVICES.**

You have asked us to represent you in connection with certain corporate, finance, public company reporting, governance, and securities matters.

If we agree to provide additional services beyond those described above, our work will be governed by this letter unless superseded by another written agreement.  Our representation is limited to the specific services that we agree to undertake.

## II.   **IDENTITY OF THE CLIENT.**

Our client in these matters will be solely Vroom and any of its parent, subsidiary or affiliate entities or constituents identified to us in conjunction with these matters, or any such entity directly or indirectly controlled by Vroom as a result of these matters, that we are requested to represent and agree to represent (the "Vroom Clients").  The Client identified to us to date is Vroom, Inc. We do not represent and will not be deemed to have an attorney-client relationship with, nor owe professional duties to, any other of Vroom's current or future parents, subsidiaries, shareholders,

US-DOCS\155347233.3

**LATHAM&WATKINS**LLP

members, joint venture partners, employees, directors, management, venturers, or other affiliates or constituents solely on account of our representation of the Vroom Clients under this engagement letter. This means that we may act adverse to such entities to the same extent as would be permissible if we were not engaged to represent the Vroom Clients. We are distinguishing between the entities and persons who are and are not our clients so that it is clearly understood to whom our various duties as attorneys are owed. If we subsequently agree to represent any additional clients after performing a conflicts check, the terms in this engagement letter (including, but not limited to terms governing conflicts of interest and arbitration of disputes) will apply to that representation unless we enter into a separate written agreement with such additional clients.

Because of the extraterritorial reach of Anti-Money Laundering laws in certain jurisdictions where Latham practices, we may need to collect identity verification documentation. We will seek to collect any required documentation from publicly-available sources but may request documentation directly from you.

We provide information to clients and others about our experience in particular areas. In this context it is helpful to be able to identify particular clients and matters. Of course, we would not publicize your matters in a manner that could harm your interests, and even where a matter is publicly known, we would not publicize it if you ask us not to do so. Otherwise, however, you consent now to our using in our marketing materials (such as pitches, website biographies, representative client lists, league tables, etc.) your name and logo in describing publicly known and non-sensitive matters we have handled for you.

## III.    ROLES OF ATTORNEY AND CLIENT.

Our responsibilities under this agreement are to provide legal services, and to provide statements to you that clearly state the basis for our fees and charges. We will not disclose any confidential information of yours to any other client, even where that information might have some bearing on their interests. Likewise, we will not disclose the confidences of any other client to you, even where that information might have some bearing on your interests, and you agree that we are under no obligation to do so. You also agree to keep us informed of developments related to this representation and to pay our statements in a timely manner. Latham will also check for conflicts of interest on an ongoing basis to ensure we are meeting our ethical obligations. The existence of a conflict depends on the parties involved in a specific matter, and therefore our engagement is contingent upon a formal clearing of conflicts after all interested parties are identified to us. Latham is able to search for conflicts via the firm's conflicts database each time a new party becomes involved, or a new matter begins. To allow us to conduct a conflicts check, you represent that you have identified or will identify to us all persons and entities that are or may become involved in the matters we handle for you, whether affiliated with you or not. We are relying on you to provide us with the names that are potentially relevant to this matter and any future matter in which we are engaged. We cannot identify conflicts in relation to individuals or entities whose names we have not searched.

During the course of this engagement, we may express opinions or beliefs to you about the effectiveness of various courses of action or about the results that might be anticipated. Such statements are expressions of opinion only, and should not be construed as promises or guarantees.

**LATHAM&WATKINS**LLP

Please also be aware that Latham & Watkins LLP has internal ethics and professional responsibility counsel, who advise Latham attorneys regarding their ethical, professional and legal duties. From time to time, the attorneys working on your matter may consult these lawyers at no cost to you. You acknowledge that any such consultation is protected by Latham's own attorney-client privilege, not subject to discovery, and is property of the firm and is not part of the Client File as defined in Section 4 of this letter.

Certain laws (for example, those relating to money laundering and tax fraud) give power to authorities such as the police or tax authorities to inspect client information and take copies of documents. In addition, in specific circumstances, these laws compel us to report information to the authorities even in the absence of a request. It is possible that, at any time, we may be requested by these authorities to provide them with access to documents held by our firm, or to attend interviews with them in connection with the work we have done for you. In the unlikely event that such a situation arises, we shall comply with the request only to the extent that we believe we are bound by law to do so and, insofar as it is practicable, shall notify you of the request or the sharing of information. As part of our service to you, we will do our best to protect your interests in those circumstances. We reserve the right to disclose any information to our professional indemnity insurers, advisers or bankers in connection with the operation of our client account.

## IV.    **CLIENT FILES AND RETENTION.**

In the course of your representation, we shall maintain a file in which we may store correspondence, agreements, governmental filings, prospectuses, disclosures, pleadings, deposition transcripts, exhibits, physical evidence, expert reports, and other items reasonably necessary to your representation ("Client File"), which shall be and remain your property. Our internal communications, preliminary drafts, notes, and mental impressions ("Latham Materials") shall be and remain our property and shall not be considered part of your Client File. Upon completion of a specific project, your original Client File for that project shall be available to you. We will be entitled to make copies if we choose, and such copies shall be and remain our property. You also agree at the conclusion of the project (whether or not you take possession of the Client File) to take possession of any and all original contracts, wills, stock certificates, and other such important documents that may be in the Client File and we shall have no further responsibility with regard to such documents.

If you do not take possession of the Client File at the conclusion of the project, we will store such file for you for at least seven years. If you do not take possession of the Client File by the conclusion of the seven-year period, you relinquish ownership of it and agree that it shall become our sole property and we may dispose of it. In addition, in the event we are holding files of yours for other matters, you agree that after a seven-year period they shall become our sole property and we may dispose of them. You agree that we may enact and implement reasonable retention policies for Latham Materials and that we also have discretion to destroy such materials.

We will retain copyright and knowhow in all documents we draft during the course of our work for you, but we grant you a royalty free license to use the documents for your purposes.

November 9, 2024
Page 4

**LATHAM&WATKINS**LLP

## V.    CONFLICTS OF INTEREST.

While we are representing you in this matter, we will have no other role in this matter for another party without your consent. As with any other client and any other matter, you will have our complete loyalty with respect to this matter.

Latham & Watkins LLP is an international law firm with numerous attorneys and offices in many countries, serving clients in many different areas of law and industries, who may now or in the future operate in the same lines of business as you. It is possible that during the time we are representing you, some of our current or future clients may ask us to represent them in matters in which you are involved as another party. Both our own prudent business conduct, and the interests of our other clients, call for us to seek to retain the ability to accept matters for all of our clients. We would only rely on this prospective waiver for matters where we are confident that we have not obtained any confidential information that would give our other client an advantage in the adverse matter.

By entering into this agreement, you consent in advance to our acceptance of matters adverse to any Vroom Client (whether such matters are currently pending or arise in the future), provided the matters are not substantially related to any matters we are handling or have handled for you, including the following types of matters:

- Litigation, arbitration, mediation, or any other form of dispute resolution or other controversy matters;

- Transactional matters; and

- Any bankruptcy, regulatory, administrative, legislative or rulemaking proceeding that does not involve litigation directly adverse to the Vroom Clients.

By entering into this agreement, you consent in advance to such adverse representations. Thus, for example, you agree that we would be able to take on a new representation of a current or future client in a lawsuit in which any Vroom Client is an adverse party at the same time that we are representing the Vroom Clients, provided the adverse matter is not substantially related to any matters we are handling or have handled for you. This prospective waiver includes the assertion of any cross-claims or counter-claims adverse to the Vroom Client. Under the terms of this prospective waiver, we would also be able to represent a current or future client in a transactional matter across the table from any Vroom Client at the same time that we are representing the Vroom Clients, provided the adverse matter is not substantially related to any matters we are handling or have handled for you.

You agree that, in a matter where you are, or may be, competing with one or more other bidders or financers in an M&A matter or related financing, to allow our firm, with separate teams (commonly referred to as "trees") that do not share information about the related matters (except as may be agreed in respect of any particular subject such as shared regulatory, tax, and antitrust diligence) to represent other competing bidders and financing sources for other bidders. We will not accept an engagement from another client in the situations described above unless we believe

US-DOCS\155347233.3

**LATHAM&WATKINS**LLP

that our representation of that other client will not have an adverse effect on the exercise of our independent professional judgment on your behalf in the matters in which we represent you.

By entering into this agreement you agree that we may maintain a separate attorney-client relationship, in other matters, with persons or entities who are adverse to you in matters we handle for you (including adversaries in the matters described in this letter), so long as the matters are not substantially related and we may continue any such attorney-client relationships in which we are currently engaged.

You should feel completely free to consult other counsel concerning the contents of this Section V and we encourage you to do so. By signing this letter, you acknowledge that you have had an opportunity to consult with other counsel if you so desire, and provide your informed consent to the adverse representations described above.

## VI.   RATES, FEES AND CHARGES.

The Vroom Clients have delivered or are in the process of delivering to Latham retainer funds with which Latham has established an evergreen advance payment retainer in the amount of not less than $500,000.00. This evergreen advance payment retainer, and all replenishments thereof, will be held by Latham as an advance toward our fees and charges in connection with this letter, but will not be put into a trust, escrow or segregated account. To the extent that the amount of any of Latham's invoice statements is less than the agreed upon evergreen advance payment retainer, the Vroom Clients will pay Latham, promptly upon its receipt of Latham's invoice statement, a further payment to bring the evergreen advance payment retainer to the agreed upon amount. To the extent that the amount of Latham's invoice statement is more than the agreed upon evergreen advance payment retainer, the Vroom Clients will pay to Latham, promptly upon its receipt of Latham's invoice statement, the excess amount plus the amount required to replenish the evergreen advance payment retainer. In connection with any potential bankruptcy filing, Latham may request that the amount of the retainer be increased as reasonably agreed between the Vroom Clients and Latham. Any funds that you may deposit with us as an advance towards our fees and charges will be treated as property of the firm. Any unused portion of such advance after our services are concluded will be promptly returned to you.

Our fees are based primarily on the amount of time spent by our lawyers, paralegals and other professionals on your behalf. Each lawyer, paralegal and other professional assigned to this matter will have individual hourly billing rates, and the applicable rate multiplied by the number of hours spent, measured in tenths of an hour, will be the initial basis for determining our fee.

In general, our attorneys' billing rates will range from $760 per hour to $2,745 per hour, depending upon the seniority and expertise of the attorney involved. For paralegal and other professional time, our rates will range from $235 to $1,440 per hour. Other factors may be taken into account in determining our fees and may result in an increase over the rates specified above, including the novelty or difficulty of the legal problems involved, the risks and responsibilities assumed by us, the extent to which unforeseen circumstances arise, the time limitations imposed by you or by circumstances, the seriousness of the consequences of the matter, the results obtained, and other considerations permitted by applicable rules of professional conduct.

**LATHAM&WATKINS**LLP

In addition to fees, you agree to pay for disbursements and other charges. These will include such items as photocopying and scanning documents (black and white $0.15 per page; color $0.75 per page); at-cost expense for large-volume print jobs over 100 pages when formatted in Word or Adobe Acrobat applications; long-distance and roaming mobile phone charges; use of fee-based research databases (90% of the third-party vendor rate or 1.25 times our volume-discounted cost depending on vendor); couriers and air freight (1.10 times our volume-discounted cost); messengers (at third-party vendor rate); client-specific work by staff; staff overtime and meals (as defined by federal or local law); transportation (where dictated by safety reasons, and which may include a transaction fee); word processing; postage, at cost; supplies (for large volume only); and other reasonable costs and expenses. For disbursements over $1,500, we may ask that billings be sent directly to you or that advances be provided.

In the event we are compelled to testify or respond to a subpoena or other legal process in relation to a matter we have handled for you, you agree that we are entitled to be reimbursed for our time in doing so at our then-current rate, and for our expenses reasonably incurred, even if our attorney-client relationship with you is terminated at that time.

When our personnel travel, we generally utilize business class for international flights. Through a third-party travel management company, in-house travel services are provided for our U.S. offices. A ticketing fee of $30 will be charged for fares up to $300, and $75 will be charged for fares over $300. There are no additional charges for changes to reservations or for reimbursement of unused tickets. Our personnel bill for travel time, but if they work on another matter while traveling for you, you will not be billed for that time.

We intend to provide statements to you on a monthly basis. They will show our time logged in tenth-of-an-hour increments and will separate fees from disbursements and other charges. Payment of our statements is due promptly upon receipt. Our rates are based on our receiving payment within thirty (30) days. Should this matter involve an immediate or expected bankruptcy filing, however, we may provide invoice statements on a more frequent basis for immediate payment upon the receipt of our invoices.

We may choose to terminate our relationship with you, subject to any applicable ethics rules, in the event that our fees are not paid in accordance with the terms of this engagement letter or other agreement.

Our billing rates and charges are usually revised annually, but we reserve the right to revise them at other times. Following any such revision, our new rates and charges will be applied to your account, and this letter constitutes written notice to you of our right to make such revisions. Notwithstanding the forgoing, we agree to continue to charge a flat fee of $250,000 for public reporting under the Securities Exchange Act of 1934 for the period from January 1, 2024 through December 31, 2024. To clarify our existing arrangement, this flat fee shall apply only to ordinary-course public reporting and shall not apply to public company reporting that is non-ordinary course and/or related to transactional work. In addition, and consistent with the Prior Engagement Letters, we are pleased to continue to offer Vroom a 15% discount off of our standard hourly rates on any non-transactional legal work.

November 9, 2024
Page 7

**LATHAM&WATKINS**LLP

Any funds that you deposit with us as an advance against our fees and charges will be treated as property of the firm. Any unused portion of such advance after our services are concluded will be returned to you.

From time to time, you may request estimates of the fees and charges that we anticipate incurring on your behalf. These estimates are subject to unforeseen circumstances and are by their nature inexact. While we may provide estimates for your general planning purposes, such estimates are subordinate to our regular billing procedures, absent an express written agreement to the contrary.

If any dispute should arise between us and you as to fees, subject to certain conditions you may have the right to require that the dispute be arbitrated.

## VII.   DATA PROTECTION & COMMERCIAL COMMUNICATIONS BY EMAIL.

In order to provide legal services and maintain our business relationship, the firm may use personal information about you and other individuals at your organization. Details of how we use this information are set out in our Client and Third Party Privacy Notice which can be found on our website at www.lw.com/privacy.

To the extent that you share with us information about California residents that comprises "personal information" for purposes of the California Consumer Privacy Act and implementing regulations ("CCPA") in connection with our provision of services covered by this letter, and neither §§ 1798.140(t)(2)(A), (B), (D) nor §§ 1798.145(c)-(e) of the CCPA apply, we shall be a service provider and only collect, retain, use and disclose such information for the purpose of providing the services covered by this letter, or as otherwise permitted by the CCPA. To the extent this paragraph applies, you will provide notice to such California individuals that you may disclose such information to service providers such as Latham & Watkins LLP.

We have made a commitment through our Binding Corporate Rules to apply a consistent standard across the firm when collecting, using and managing personal information. If you have any questions about how we use your personal information or wish to exercise your rights, please contact the Global Data Protection Officer at DataPrivacy@lw.com.

We constantly attempt to improve our service, and monitor developments in the law and practice. Periodically we may send information about this, including brochures and press releases and invitations to seminars or talks, if we believe that they may be of interest to you. You agree that we may send information of this kind by email to you and others at your organization with whom we have contact. You can opt out at any time.

## VIII.   ARBITRATION OF DISPUTES.

Any controversy or claim, whether in tort, contract or otherwise, arising out of or relating to the relationship between any Vroom Client, its affiliates or successors (the "Client Arbitration Parties") and Latham & Watkins LLP, its affiliated partnerships, attorneys or staff or any of their successors (the "Latham Arbitration Parties") or the services provided or the fees charged by the

US-DOCS\155347233.3

November 9, 2024
Page 8

**LATHAM&WATKINS**LLP

Latham Arbitration Parties pursuant to this engagement letter or otherwise to the Client Arbitration Parties shall be finally resolved by arbitration in accordance with the International Institute for Conflict Prevention and Resolution Rules for Non-Administered Arbitration ("CPR Rules"). By agreeing to arbitrate, the parties are agreeing to waive their right to a jury trial. This arbitration clause and any arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. The seat of the arbitration shall be New York, New York, but any hearings may be held in, and to the extent state law is applicable the arbitrators shall apply the substantive law of, the state in which the Latham & Watkins office is located whose attorneys spent the most amount of time on the matter in dispute. Any issue concerning the location of the arbitration, the extent to which any dispute is subject to arbitration, or the applicability, interpretation, or enforceability of this agreement shall be resolved by all of the arbitrators. All aspects of the arbitration shall be treated as confidential, and neither the parties nor the arbitrators may disclose the existence, content or results of the arbitration, except as necessary to comply with insurance, legal or regulatory requirements. Any party that discloses any information about the arbitration under the preceding sentence, or makes any filing in any court related to a dispute covered by this clause, shall take all lawful steps to ensure confidential treatment, including without limitation filing under seal. The arbitration panel shall be entitled to award any damages provided for under the state law that is controlling.

## IX.   LIMITED LIABILITY PARTNERSHIP.

Latham & Watkins LLP is a limited liability partnership (LLP). Similar to the corporate form of business organization, the LLP form generally limits the liability of the individual partners of the firm to the capital they have invested in the firm for claims arising from services performed by the firm. Our form of organization as an LLP will not diminish the ability to recover damages from the firm or from any individuals who directly caused the loss.

Because of legal requirements in those countries, work done out of our firm's offices in England, France, Italy, Hong Kong, Japan, and Singapore will be carried out through affiliated partnerships registered locally. Latham & Watkins operates in Israel through a limited liability company, in South Korea as a Foreign Legal Consultant Office, and in Saudi Arabia through a limited liability company. These distinctions will not impact on the provision of legal services by our firm, although invoices may be issued to you through an affiliate.

## X.   ENTIRE AGREEMENT AND MISCELLANEOUS.

You and we understand that this letter constitutes the entire agreement pertaining to the engagement of Latham & Watkins LLP, and that it shall not be modified by any policies, procedures, guidelines or correspondence from you or your representative unless agreed to in writing by Latham & Watkins LLP , notwithstanding anything we may be required to acknowledge in order to use your electronic billing software now or in the future.

All parties signing this letter represent and warrant that they are fully authorized to enter into this agreement, and in the case of signatories agreeing on behalf of organizations, to bind the organization or organizations to the terms in this letter.

**November 9, 2024**
**Page 9**

**LATHAM&WATKINS**LLP

The words "execution," "execute", "signed," "signature," and words of like import in or related to this Engagement Letter and/or any document to be signed in connection with this Engagement Letter and the transactions contemplated hereby shall be deemed to include electronic signatures, the electronic matching of assignment terms and contract formations on electronic platforms approved by Latham & Watkins LLP, or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

Either party can terminate the attorney-client relationship on this matter by notice to the other party. Otherwise, our relationship with you will be deemed concluded when we have completed our agreed-upon services, except that for the avoidance of doubt, your obligations for fees and charges shall survive. In addition, and without limiting the preceding sentence, in the event we have performed no work on your behalf for six consecutive months, you agree that our attorney-client relationship with you will have been terminated.

## XI.   APPROVAL AND RETURN OF LETTER.

If this letter meets with your approval, please sign and return the enclosed copy, together with your advance of the retainer specified above (to the extent not previously remitted).

We look forward to working with you.

Sincerely,

*/s/ Ian Schuman*

Ian Schuman

of LATHAM & WATKINS LLP

**LATHAM&WATKINS**LLP

### Approval of Engagement

Vroom, on behalf of itself and the Vroom Clients, agrees to the terms of the enclosed letter, effective as of the date on which Latham & Watkins LLP first provided services to the Vroom Clients.

By signing this letter, the Vroom Clients acknowledge that the Vroom Clients have been afforded the full opportunity to review it and to seek the advice of independent counsel, and either have in fact consulted with such independent counsel or have chosen not to do so.

BY SIGNING THIS LETTER, THE VROOM CLIENTS AGREE TO HAVE ANY ISSUE ARISING OUT OF OR RELATING TO THE SERVICES OF THE LATHAM ARBITRATION PARTIES (INCLUDING ANY CLAIM FOR PROFESSIONAL LIABILITY) DECIDED IN ARBITRATION AND THE VROOM CLIENTS GIVE UP THEIR RIGHT TO A JURY OR COURT TRIAL AND ACKNOWLEDGE THE ARBITRATION PROVISION IN SECTION 8 ABOVE.

Date: November __9__, 2024.

VROOM, INC.

By: *Anna-Lisa Corrales*

Name: Anna-Lisa Corrales

Title: Chief Legal Officer

## Appendix 1

## Potential Parties in Interest[1]

### 1.    Debtor and Non-Debtor Affiliates

VROOM, INC.
AAGP, LLC
AUTO AMERICA TECHNOLOGIES LTD
CARSTORY, LLC
DARKWATER FUNDING, LLC
NATIONS DRIVE, LLC
UACC AUTO FINANCING TRUST III
UACC AUTO FINANCING TRUST IV
UACC AUTO FINANCING TRUST V
UNITED AUTO CREDIT CORPORATION
UNITED AUTO CREDIT FINANCING
    LLC
UNITED AUTO CREDIT
    SECURITIZATION TRUST 2022-1
UNITED AUTO CREDIT
    SECURITIZATION TRUST 2022-2
UNITED AUTO CREDIT
    SECURITIZATION TRUST 2023-1

UNITED AUTO CREDIT
    SECURITIZATION TRUST 2024-1
UPFC SUB I, INC.
VAST.COM D.O.O.
VAST.COM, INC.
VFS I, LLC
VFS NEAR PRIME TRUST I
VROOM AUTOMOTIVE FINANCE
    CORP.
VROOM AUTOMOTIVE, LLC
VROOM FINANCE CORPORATION
VROOM FINANCE HOLDINGS, LLC
VROOM INDIANAPOLIS LLC
VROOM LOGISTICS, LLC
VROOM SERVICES, LLC
VROOM TRANSPORTATION
    SERVICES, LLC

### 2.    Debtor's Previous Names (including previous DBA and Trade Names)[2]

VROOM HOLDINGS, INC.

### 3.    Debtor's Restructuring Professionals

DELOITTE TOUCHE TOHMATSU
    LIMITED
KURTZMAN CARSON CONSULTANTS,
    LLC (D/B/A VERITA GLOBAL, LLC)

LATHAM & WATKINS LLP
PORTER HEDGES LLP
STOUT RISIUS ROSS, LLC
THE OVERTURE ALLIANCE

---

[1]   This list (and the categories contained herein) are for purposes of a conflicts check and should not be relied upon by any party as a list of creditors or for any other purpose.  As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible.  Accordingly, a party that otherwise would fall under multiple categories is likely to be listed under only one category.

[2]   This category includes all known prior names in the 8 years prior to the Petition Date.

### 4. <u>Restructuring Professionals for Noteholders</u>

WACHTELL, LIPTON, ROSEN & KATZ          MCGUIRE WOODS LLP

### 5. <u>Ordinary Course Professionals</u>

BAKER & HOSTETLER LLP                   OLIVER WYMAN, LLC
BARNES & THORNBURG LLP                  PERKINS COIE LLP
KELLEY DRYE & WARREN LLP                PRICEWATERHOUSECOOPERS
MARSH USA                                   INTERNATIONAL LIMITED
MCGINNIS LOCHRIDGE LLP                  REED SMITH LLP
OGLETREE DEAKINS, NASH, SMOAK          RSM US LLP
    & STEWART PC

### 6. <u>Current and Former Directors and Officers</u>[3]

ADAM VALKIN                             PATRICIA MORAN
AGNIESZKA ZAKOWICZ                      PAUL HENNESSY
ANNA-LISA CORRALES                      PAULA B. PRETLOW
C. DENISE STOTT                         ROBERT J. MYLOD, JR.
DAVID K. JONES                          ROBERT R. KRAKOWIAK
FREDERICK O. TERRELL                    SCOTT DAHNKE
LAURA G. O'SHAUGHNESSY                  THOMAS H. SHORTT
LAURA W. LANG                           TIMOTHY M. CROW
MICHAEL J. FARELLO

### 7. <u>Significant Noteholders and Indenture Trustees</u>

BLACKWELL PARTNERS LLC - SERIES         MUDRICK DISTRESSED
    A                                       OPPORTUNITY 2020 DISLOCATION
BLACKROCK INC                               FUND, L.P.
BOSTON PATRIOT BATTERYMARCH          MUDRICK DISTRESSED
    ST LLC                                  OPPORTUNITY DRAWDOWN FUND
EMG HOLDINGS LP                             II SC, L.P.
EQUITABLE INVESTMENT                    MUDRICK DISTRESSED
    MANAGEMENT GROUP LLC                    OPPORTUNITY DRAWDOWN FUND
MARSHALL WACE                               II, L.P.
MUDRICK CAPITAL MANAGEMENT           MUDRICK DISTRESSED
    L.P.                                    OPPORTUNITY DRAWDOWN FUND
MUDRICK CAV MASTER, LP                      III, L.P.
                                        MUDRICK DISTRESSED
                                            OPPORTUNITY FUND GLOBAL, L.P.

---

[3]   Includes Directors and Officers from 2021 – present.

MUDRICK DISTRESSED
   OPPORTUNITY SIF MASTER FUND,
   L.P.
PALOMA PARTNERS MANAGAMENT
   CO.
SILVERBACK ASSET MANAGEMENT,
   LLC

SONA ASSET MANAGEMENT
STATE STREET CORPORATION
THE BANK OF AMERICA
   CORPORATION
U.S. BANK NATIONAL ASSOCIATION

**8.**     <u>**Parties to Pending Litigation**</u>

ARIF HUDDA
ATOBRHAN GODLU
BRADY MCDONOUGH
CARMEN DANGERFIELD
CHRISTOPHER-TAYLOR KUBRICK-
   SOTELO
EMELY REYES MARTINEZ
ERICA HAYGOOD
JULIE RAINEY
KAELIN DAYE
KIMBERLY MYHRE
KYLE MYHRE
LIZBETH COLE

LOUIS CARBINS
MACE MACRO LIMITED
RHONDDA CYNON TAF PENSION
   FUND
RICHARD AND CATHERINE
   ZAWATSKY
RICK DANGERFIELD
SEAN HAYGOOD
SEAN MALLET
SIDEKICK TECHNOLOGY, LLC
TOSHI COLE
VLADIMIR YUNAYEV

**9.**     <u>**Debtor's Bank Account and Cash Management Institutions**</u>

BANK OF AMERICA, N.A.

JPMORGAN CHASE BANK, N.A.

**10.**     <u>**Known Holders of 5% or More of Outstanding Common Equity Securities of Vroom, Inc.**</u>

CATTERTON GROWTH PARTNERS II,
   L.P.
CGP2 MANAGERS, L.L.C.

CPG2 CUMULUS LP
JAMES MICHAEL CHU
SCOTT ARNOLD DAHNKE

**11.**     <u>**Landlords**</u>

GADOL 45 OWNER, LL

**12.**     <u>**Taxing and Governmental Authorities**</u>

INTERNAL REVENUE SERVICE
CITY OF NEW YORK
STATE OF ALABAMA
STATE OF COLORADO

STATE OF DELAWARE
STATE OF FLORIDA
STATE OF GEORGIA
STATE OF HAWAII

STATE OF IDAHO
STATE OF INDIANA
STATE OF LOUISIANA
STATE OF MARYLAND
STATE OF MISSISSIPPI
STATE OF MINNESOTA
STATE OF MISSOURI
STATE OF NEBRASKA
STATE OF NEW MEXICO
STATE OF NEW YORK
STATE OF NORTH CAROLINA

STATE OF OREGON
STATE OF PENNSYLVANIA

STATE OF RHODE ISLAND
STATE OF SOUTH CAROLINA
STATE OF TENNESSEE
STATE OF TEXAS
STATE OF UTAH
STATE OF WEST VIRGINIA
U.S. SECURITIES AND EXCHANGE
    COMMISSION

### 13.   **Insurance Providers**

ALLIED WORLD SPECIALTY
    INSURANCE COMPANY
AMERICAN INTERNATIONAL GROUP
    (AIG)
AXA XL SPECIALTY INSURANCE
    COMPANY
BERKSHIRE HATHAWAY SPECIALTY
    INSURANCE
BOWHEAD SPECIALTY
    UNDERWRITERS, INC.
CHUBB RISK CONTROL SERVICES
ENDURANCE AMERICAN INSURANCE
    COMPANY
FEDERAL INSURANCE COMPANY
GREENWICH INSURANCE COMPANY
MARSH QSG INTERNATIONAL
MARSH USA
MIDVALE INDEMNITY COMPANY

N2G WORLDWIDE INSURANCE
    SERVICES, LLC
NATIONAL CASUALTY COMPANY
NATIONAL UNION FIRE INSURANCE
    COMPANY OF PITTSBURGH
NATIONWIDE INSURANCE COMPANY
RISK SPECIALISTS COMPANIES
    INSURANCE AGENCY, INC.
SOMPO INTERNATIONAL
STARR INDEMNITY & LIABILITY
    COMPANY
SWISS RE CORPORATE SOLUTIONS
    AMERICA INSURANCE
    CORPORATION
TRAVELERS INDEMNITY COMPANY
UNUM LIFE INSURANCE COMPANY
    OF AMERICA
ZURICH AMERICAN INSURANCE
    COMPANY

### 14.   **Material Contract Counterparties**

AMERICAN EXPRESS COMPANY (THE)
AM REALTY
HEALTH ADVOCATE SOLUTIONS,
    INC.

INFINITE EQUITY, INC.
NASDAQ, INC.
SOLIUM CAPITAL LLC
WORKDAY, INC

15.      **Top 20 Unsecured Creditors (Excluding Creditors Appearing in Other Categories of this List)**

TEXAS OFFICE OF THE ATTORNEY
   GENERAL

16.      **Utility Providers**

VERIZON COMMUNICATIONS INC.

17.      **U.S. Bankruptcy Judges for the Southern District of Texas (and Key Staff Members)**

| | |
|---|---|
| AARON JACKSON | JUDGE JEFFREY P. NORMAN |
| AKEITA HOUSE | JUDGE MARVIN ISGUR |
| ANA CASTRO | NATHAN OCHSNER |
| CHIEF JUDGE EDUARDO V. RODRIGUEZ | ROSARIO SALDANA |
| | SHANNON HOLDEN |
| DARLENE HANSEN | SIERRA THOMAS-ANDERSON |
| JEANNIE CHAVEZ | TRACEY CONRAD |
| JUDGE ALFREDO R PÉREZ | TYLER LAWS |
| JUDGE CHRISTOPHER M. LOPEZ | ZILDE MARTINEZ |

18.      **United States Trustee for the Southern District of Texas (and Key Staff Members)**

| | |
|---|---|
| ALETHEA CALUZA | IVETTE GERHARD |
| ALICIA BARCOMB | JANA WHITWORTH |
| ALINA SAMKO-YU | JAYSON B. RUFF |
| ANDREW JIMENEZ | LUCI JOHNSON-DAVIS |
| CHRISTY SIMMONS | LINDA MOTTON |
| CHRISTOPHER R. TRAVIS | MILLIE APONTE SALL |
| GLENN OTTO | RAJALAKSHMI KRISHNAN |
| GWEN SMITH | SAMANTHA CHILTON |
| HA NGUYEN | VIANEY GARZA |
| HECTOR DURAN | YASMINE RIVERA |

19.      **Significant Competitors**

| | |
|---|---|
| AMERICAN CREDIT ACCEPTANCE | EXETER FINANCE LLC |
| CARNOW ACCEPTANCE | FIRST HELP FINANCIAL, LLC |
| CONSUMER PORTFOLIO SERVICES, INC. | FLAGSHIP CREDIT ACCEPTANCE, LLC |
| | GLOBAL LENDING SERVICES LLC |
| CREDIT ACCEPTANCE CORPORATION | |

LENDMARK FINANCIAL SERVICES,
    LLC
LOBEL FINANCIAL CORPORATION
PRESTIGE FINANCIAL SERVICES, INC
REGIONAL ACCEPTANCE
    CORPORATION
SPARTAN FINANCIAL PARTNERS
STRIKE ACCEPTANCE, INC.
VEROS CREDIT
WESTERN FUNDING, INC.
WESTLAKE FINANCIAL
WESTLAKE SERVICES, LLC

**Appendix 2**

**Client Match List**

| Matched Entity | Relationship to Debtor | Relationship to L&W[1] |
|---|---|---|
| ADAM VALKIN | Current and Former Directors and Officers | Current Client. |
| AMERICAN EXPRESS COMPANY | Material Contract Counterparties | Current Client. Former Client. |
| AMERICAN INTERNATIONAL GROUP (AIG) | Insurance Providers | Current Client.  Former Client. |
| AXA XL SPECIALTY INSURANCE COMPANY | Insurance Providers | Current Client.  Former Client. |
| BANK OF AMERICA, N.A. | Debtor's Bank Account and Cash Management Institutions | Current Client.  Former Client. |
| BERKSHIRE HATHAWAY SPECIALTY INSURANCE | Insurance Providers | Former Client. |
| BLACKROCK, INC | Significant Noteholders and Indenture Trustees | Current Client.  Former Client. |
| BLACKWELL PARTNERS LLC - SERIES A | Significant Noteholders and Indenture Trustees | Former Client. |
| DAVID K. JONES | Current and Former Directors and Officers | Current Client. |
| DELOITTE TOUCHE TOHMATSU LIMITED | Debtor's Restructuring Professionals | Current Client and Former Client. |
| EMG HOLDINGS LP | Significant Noteholders and Indenture Trustees | Current Client. |
| EQUITABLE INVESTMENT MANAGEMENT GROUP LLC | Significant Noteholders and Indenture Trustees | Former Client. |
| JPMORGAN CHASE BANK, N.A. | Debtor's Bank Account and Cash Management Institutions | Current Client.  Former Client. |
| L CATTERTON MANAGEMENT LIMITED | Known Holders of 5% or More of Outstanding Common Equity Securities of Vroom, Inc. | Current Client.  Former Client. |
| LAURA W. LANG | Current and Former Directors and Officers | Current Client. |

---

[1]  The term "**Current Client**" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past 12 months and L&W has at least one open matter.  The term "**Former Client**" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years.  L&W does not disclose connections if time was recorded more than three years before the Petition Date.

| Matched Entity | Relationship to Debtor | Relationship to L&W[1] |
|---|---|---|
| MACE MACRO LIMITED | Parties to pending litigation | Current Client.  Former Client. |
| MUDRICK CAPITAL MANAGEMENT L.P. | Significant Noteholders and Indenture Trustees | Former Client. |
| NASDAQ, INC. | Material Contract Counterparties | Former Client. |
| NATIONWIDE INSURANCE COMPANY | Insurance Providers | Current Client.  Former Client. |
| PATRICIA MORAN | Current and Former Directors and Officers | Current Client. |
| PAUL HENNESSY | Current and Former Directors and Officers | Current Client. |
| PERKINS COIE LLP | Ordinary Course Professionals | Former Client. |
| PRICEWATERHOUSECOOPERS INTERNATIONAL LIMITED | Ordinary Course Professionals | Current Client.  Former Client. |
| REGIONAL ACCEPTANCE CORPORATION | Significant Competitors | Current Client. |
| ROBERT J. MYLOD, JR. | Current and Former Directors and Officers; Known Holders of 5% or More of Outstanding Common Equity Securities of Vroom, Inc. | Current Client. |
| SCOTT DAHNKE | Current and Former Directors and Officers | Current Client. |
| SONA ASSET MANAGEMENT STATE STREET CORPORATION | Significant Noteholders and Indenture Trustees | Current Client.  Former Client. |
| SWISS RE CORPORATE SOLUTIONS AMERICA INSURANCE CORPORATION | Insurance Providers | Former Client. |
| THE BANK OF AMERICA CORPORATION | Significant Noteholders and Indenture Trustees | Current Client.  Former Client. |
| U.S. BANK NATIONAL ASSOCIATION | Significant Noteholders and Indenture Trustees | Current Client.  Former Client. |
| VERIZON COMMUNICATIONS INC. | Utility Providers | Current Client. Former Client. |
| WORKDAY | Material Contract Counterparties | Current Client. |

2